**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

UNITED STATES OF AMERICA,

Plaintiff, : Case No. 3:09-cr-045
Civil Case No. 3:13-cv-298

District Judge Thomas M. Rose
- vs - Magistrate Judge Michael R. Merz

CALILIN GRANT,

Defendant. :

# REPORT AND RECOMMENDATIONS

This is a case brought under 28 U.S.C. § 2255 case to vacate Defendant's conviction. Defendant was initially represented by counsel who filed the Motion to Vacate on his behalf. Grant then moved to withdraw the original Motion and to discharge counsel so that he could file his own § 2255 Motion (Doc. Nos. 197, 198, 199). Grant finally did so on December 9, 2013 (Doc. No. 204).

The Motion is before the Court for initial review pursuant to Rule 4(b) of the Rules Governing § 2255 Cases which provides:

> The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States to file an answer, motion, or other

> response within a fixed time, or take other action the judge may order.

Grant asserts he was deprived of his right to the effective assistance of counsel. Although he divides his claims into three parts, it is useful for purposes of analysis to list every asserted defect in trial counsel's performance under the separate Grounds for Relief in which Grant pleads them:

**Ground One: Ineffective Assistance of Counsel in General**

> **Subclaim 1.** "Petitioner believes he was pleading to an open plea, as he rejected the government's initial plea offer of 15 years. Nonetheless, at the guilty plea hearing the petitioner signed an agreed to the Government's plea offer see Tr. Guilty plea. Counsel just basically took advantage of the petitioner's lack of understanding of the legal system and coerced him into pleading guilty to the government's initial plea offer." (Motion, Doc. No. 204, PageID 905.) "Mr. Grant rejected the initial plea offer and to his understanding was pleading to no agreement and a possible sentence of ten years to life. Nonetheless it appears the defendant did in fact plead guilty to the Government's initial plea agreement see TR. 9-21-2011 where he in fact he agreed to the provisions of the plea agreement." *Id.* at PageID 906.

> **Subclaim 2.** "Petitioner further believes that his counsel failed to conduct any legal strategy and preparing a defense of any possible trial defects. Counsel never fully explained the legal right to the petitioner, nor did he adequately perform any legal research to determine the holes in the Government's case, i. e., possible defective indictment, lack of any physical evidence and to conduct any witness interviews." *Id.* at PageID 905.

> **Subclaim 3**. "Mr. Grant has clearly shown that had he received proper advise [sic] he would have went [to] trial. It's even established by record Mr. Grant had no actual understanding of what he was doing, any defendant who clearly answers "yes" to all

questions asked is not fully understanding the legal aspects of the proceeding." *Id.* at PageID 907.

**Subclaim 4**. "Mr. Grant's counsel was so constitutional deficient that he filed a frivolous appeal to the (Sixth cir. circuit of appeals) knowing full well that if in fact Mr. Grant actually pled guilty to the Government's plea offer he would have waived any right to an appeal." *Id.*

**Subclaim 5.** "Had Mr. Grant's counsel adequately performed his proper ethical duties an[d] properly researched the case at hand he would have seen the lack of a conspiracy charge." *Id.* at PageID 908.

**Subclaim 6.** Counsel failed to conduct any pretrial discovery. *Id.* at PageID 909.

**Ground Two: Ineffective Assistance of Counsel During Plea Stages**

**Subclaim 7**. "The U.S. attorney's office threatened the defendant that he plead guilty or they would apply a 851 enhancement, Doubling the mandatory minimum, had counsel acted effectively he would have protected defendant's constitutional rights." *Id.* at PageID 910.

**Subclaim 8**. " . . .Counsel advised him to enter a plea agreement an[d] cooperate with the government, asserting that he would receive a downward departure as a result.The downward departure was never filed by the government, and Mr. Grant received a sentence substantially higher then what he had been promised. Making matters are whole lot worse, counsel failed to have a written stipulation concerning the possibility of a 5K 1.1 motion included in the written plea agreement. As a result when Mr. Grant attempted to enforce the Government's promise of a downward departure at sentencing, the government was able to claim that it had never promised to file a motion under 5K 1.1. Additionally Mr. Grant believed he would not be punished for the weapons found in the search of the Vanguard residence because the

> government had dropped the weapons offense. (See sentencing tr 02/13/12 attached). However, this was because counsel failed to explain to Mr. Grant that he could still receive an enhancement for the presence of the weapons. Finally, when Mr. Grant attempted to appeal on this basis the appeal was dismissed based on an ill-advised appeal waiver contained in the written plea agreement. . . . Had counsel performed up to constitutional standards, Mr. Grant would have entered a plea agreement containing a written promise of a downward departure. Mr. Grant would not have cooperated as extensively had he understood that the Government's promise for a downward departure meant nothing because it was not made in writing." *Id.* at PageID 911.

**Ground Three: Ineffective Assistance of Counsel at Sentencing**

> **Subclaim 9**. "It is clear that possession of a weapon was the basis for imposing 180 months. However, the firearm charge was dismissed by motion of the government thus not part of the proceeding's. Nonetheless, defendant argues this enhancement was proscribed by statute and contains an element of the offense which must be made by a jury." *Id.* at PageID 913.

**Procedural History**

Grant was charged in the Second Superseding Indictment in this case in Counts 1, 2, 3, and 4 on July 27, 2010 (Doc. No. 86). On September 21, 2011, Grant entered into a Plea Agreement with the United States (Doc. No. 162). On the same day, District Judge Rose conducted a plea colloquy with Grant (Minute Entry, Doc. No. 163; Transcript, Doc. No. 185).

The Plea Agreement in this case provides that Grant will plead guilty to Count One of the Second Superseding Indictment which charges him with conspiring to distribute and possess with intent to distribute at least five kilograms of cocaine (Doc. No. 162, PageID 609). As noted in the Plea Agreement, the possible sentence for that offense is a mandatory minimum of ten years imprisonment, but could be as much as life in prison. *Id.* at PageID 610. Among other things, Grant agreed not to withdraw or attempt to withdraw his guilty plea "or otherwise seek to set it aside." *Id.* at PageID 611. If Grant complied, the Government agreed to dismiss other charges made against him in the Second Superseding Indictment, although

> Defendant understands that the Court may consider dismissed and uncharged counts in determining the applicable Sentencing Guidelines range, where the sentence should fall within that range, the propriety and extent of any departure from that range, and the determination of the sentence to be imposed after consideration of the sentencing guidelines and all other relevant factors (including relevant offense conduct)

*Id.* at PageID 612. Grant did not agree to cooperate with the Government nor did the Government promise to consider any substantial assistance motion for any such cooperation. Grant waived his right to appeal unless the Government appealed or the Court sentenced him about the statutory maximum. *Id.* at PageID 613. Grant agreed that, other than what was stated in the Plea Agreement, "there are no promises, understandings or agreements between the USAO [U. S. Attorney's Office] and Defendant or Defendant's counsel." *Id.* at PageID 614. Attached to the Plea Agreement is a written Statement of Facts agreed to by Grant which recites that Grant conspired with others between at least December 2006 and March 2009 to distribute at least five kilograms of cocaine and during the course of the conspiracy possessed at least one firearm.

During the plea colloquy on September 21, 2011, Grant swore to answer Judge Rose's questions truthfully (Transcript, Doc. No. 185, PageID 676). Grant said he had obtained a GED and had no difficulty reading, understanding, or writing the English language. *Id.* at PageID 678. He swore that he understood the Second Superseding Indictment, the Plea Agreement, and the Statement of Facts. *Id.* at PageID 679. Grant said he wanted to plead to those facts and had no "questions, concerns, clarifications, additions, or deletions." *Id.* at PageID 684. He admitted that the facts were true. *Id.* Grant said he understood there was a mandatory minimum sentence of ten years imprisonment and a maximum term of life imprisonment. *Id.* at PageID 689-90.

Defense counsel said he had discussed the Sentencing Guidelines with Grant and had come up with a tentative conservative estimate of an advisory range of 210 to 262 months imprisonment. *Id.* at PageID 696.

Judge Rose thoroughly discussed the rights Grant would be giving up if he pled guilty. *Id.* at PageID 700-702. He then went over the Plea Agreement and Grant said he understood it. *Id.* at PageID 702, 704. Judge Rose asked Grant "has anyone promised you anything other thanis contained within the pages and provisions contained in this plea agreement" to which Grant answered "no." *Id.* at PageID 706. At the same place he swore that no one was forcing, threatening, or compelling him to accept the plea.

After the plea colloquy was completed, Grant pled guilty. *Id.* at PageID 710. Judge Rose then found there was an adequate factual basis for conviction and that the guilty plea was voluntary. *Id.* at PageID 711.

After preparation of a Presentence Investigation Report by the Probation Department, Grant appeared for sentencing on January 13, 2012 (Minute Entry, Doc. No. 179; Transcript, Doc. No. 186). He was sentenced to be imprisoned for 180 months (Judgment, Doc. No. 181).

He appealed to the Sixth Circuit Court of Appeals on January 27, 2012 (Doc. No. 183), but that court dismissed the appeal on September 5, 2012 (Doc. No. 193). Grant's trial attorney, Jon Paul Rion, filed an original Motion to Vacate on Grant's behalf on September 4, 2013 (Doc. No. 194), but Grant has subsequently discharged Mr. Rion and is proceeding *pro se* (Doc. Nos. 197, 198, 199, 200).

# Analysis

## Standards of Review

### Ineffective Assistance of Counsel

The governing standard for ineffective assistance of counsel claims is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged

> conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.

**Motions to Vacate Under 28 U.S.C. § 2255**

A prisoner seeking relief under 28 U.S.C. § 2255 must allege either "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003). In other words, to warrant relief under § 2255, a prisoner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect of influence on the guilty plea or the jury's verdict. *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2006), *citing Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). To obtain relief under 28 U.S.C. § 2255, a defendant must establish the denial of a substantive right or defect in the trial that is inconsistent with the rudimentary demands of fair

procedure. *United States v. Timmreck,* 441 U.S. 780 (1979); *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)(*per curiam*). Relief under 28 U.S.C. § 2255 is available when a federal sentence was imposed in violation of the Constitution or laws of the United States or the trial court was without jurisdiction or the sentence is in excess of the maximum sentence allowed by law, or is "otherwise subject to collateral attack." *United States v. Jalili,* 925 F.2d 889, 893 (6th Cir. 1991). Apart from constitutional error, the question is "whether the claimed error was a 'fundamental defect which inherently results in a complete miscarriage of justice,'" *Davis v. United States*, 417 U.S. 333, 346 (1974), *quoting Hill v. United States*, 368 U.S. 424, 428-429 (1962); *see also Griffin v. United States,* 330 F.3d 733, 736 (6th Cir. 2006). Nonconstitutional claims not raised at trial or on direct appeal are waived for collateral review except where the errors amount to something akin to a denial of due process; mistakes in the application of the sentencing guidelines will rarely, if ever, warrant relief from the consequences of waiver. *Grant v. United States,* 72 F.3d 503, 506 (6th Cir. 1996).

**Application**

With these standards in mind, the Court examines each of Grant's claims of ineffective assistance of counsel.

**Subclaim One**

In his first subclaim, Grant claims his attorney somehow coerced him into accepting the Government's initial plea offer when he thought he was pleading to an "open plea." Grant does

not say what he understands by the term "open plea," but the common understanding is that an open plea leaves sentencing to the judge's discretion, which must of course be exercised within the limits provided by law.

Grant asserts the Government's original plea offer was for a fifteen year sentence and that what he ended up accepting was the Government's initial offer. That is not so. The Plea Agreement evidences an "open plea" in the sense that it left open to Judge Rose any sentence between ten years and life imprisonment.

A plea of guilty or no contest is valid if it is entered voluntarily and intelligently, as determined by the totality of the circumstances. *Brady v. United States*, 397 U.S. 742, 748 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969); *King v. Dutton*, 17 F.3d 151 (6th Cir. 1994); *Riggins v. McMackin*, 935 F.2d 790, 795 (6th Cir. 1991); *Berry v. Mintzes*, 726 F.2d 1142, 1146 (6th Cir. 1984). The determination of whether this plea was intelligently made depends upon the particular facts and circumstances of each case. *Johnson v. Zerbst,* 304 U.S. 458, 463 (1938); *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993).

> A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e. g. bribes).

*Brady v. United States*, 397 U.S. 742, 755 (1970). In order for a guilty plea to be constitutional it must be knowing, intelligent, voluntary, and done with sufficient awareness of the relevant circumstances and likely consequences. *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005). The identical standard applies to a plea of no contest or *nolo contendere*. *See Fautenberry v. Mitchell*,

515 F.3d 614, 636–37 (6th Cir. 2008). The defendant must also be aware of the maximum sentence that can be imposed for the crime for which he is pleading. *King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994). The voluntariness of a guilty or no contest plea is determined in light of all relevant circumstances surrounding the plea. *Brady*, 397 U.S. at 749. If a prosecutor's promise is illusory, then a plea is involuntary and unknowing. *United States v. Randolph*, 230 F.3d 243, 250–51 (6th Cir. 2000). However, where a defendant is "fully aware of the likely consequences" of a plea, it is not unfair to expect him to live with those consequences. *Mabry v. Johnson*, 467 U.S. 504, 511 (1984). A plea-proceeding transcript which suggests that a guilty or no contest plea was made voluntarily and knowingly creates a "heavy burden" for a petitioner seeking to overturn his plea. *Garcia v. Johnson*, 991 F.2d 324, 326–28 (6th Cir. 1993). Where the transcript shows that the guilty or no contest plea was voluntary and intelligent, a presumption of correctness attaches to the trial court findings of fact and to the judgment itself. *Id.* at 326–27.

A court cannot rely on the petitioner's alleged "subjective impression" "rather than the bargain actually outlined in the record," for to do so would render the plea colloquy process meaningless. *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999). If the plea colloquy process were viewed in this light, any defendant who alleged that he believed the plea bargain was different from that outlined in the record would have the option of withdrawing his plea despite his own statements during the plea colloquy indicating the opposite. *Id.*

To the extent Grant contends Rion coerced him to accept something other than an "open plea" or to accept the Government's initial plea offer of an agreed sentence of fifteen years, the record plainly refutes his claim.

**Subclaim Two**

With respect to the second subclaim, Grant has failed to show any prejudice from whatever Mr. Rion did or did not do with respect to strategy or witnesses. It is not enough to baldly assert that defense counsel had no strategy or interviewed no witnesses. Rather, a movant under § 2255 must make some showing that he was prejudiced by this behavior of his attorney. Grant has not said what strategy he believes would have worked to obtain a better result. Nor has he identified any witnesses who could have assisted his defense or who Mr. Rion should have interviewed to be prepared for their testimony at trial.

**Subclaim Three**

In his third subclaim, Grant asserts Mr. Rion did not give him a thorough understanding of the process. Of course, by making this assertion, he is admitting that he lied under oath in open court to Judge Rose, because he was asked many times if he understood the guilty plea process and he said that he did.

As proof that he did not understand what was going on, Grant claims that any defendant who answers "yes" to all the court's questions during a plea colloquy cannot possibly understand what is going on. But Grant did not answer "yes" to all Judge Rose's questions. Rather, he answered "yes" when it was appropriate and "no" when it was appropriate to give that answer.

**Subclaim Four**

In his fourth subclaim, Grant asserts Rion proved his deficiency by filing an appeal whereas he should have known that the Plea Agreement contained an appeal waiver. Grant has not told the Court whether he asked Mr. Rion to file an appeal. If he was asked to file a notice of appeal, Mr. Rion would have been bound to do so regardless of any opinion he might have had about possible issues to be raised. Failure to file a notice of appeal on request is ineffective assistance without any showing of prejudice. *Ludwig v. United States*, 162 F.3d 456 (6th Cir. 1998); *United States v. Peak*, 992 F.2d 39 (4th Cir. 1993); *United States v. Tajeddini*, 945 F.2d 458 (1st Cir. 1991); *Estes v. United States*, 883 F.2d 645 (8th Cir. 1989); *Lozada v. Deeds*, 964 F.2d 956 (9th Cir. 1992); *Abels v. Kaiser*, 913 F.2d 821 (10th Cir. 1990). In this judge's experience, many defendants who plead guilty with a Plea Agreement with a waiver of appeal in it later accused their attorney of ineffective assistance of trial counsel for failure to file the notice of appeal. In any event, Grant has not shown he suffered any prejudice from the supposedly frivolous appeal.

**Subclaim Five**

In his fifth subclaim, Grant asserts that if Mr. Rion had done his research properly, he would have seen there was no basis for a conspiracy charge in this case. He argues the allegations in the Second Superseding Indictment are not sufficient to prove a conspiracy

(Amended Motion, Doc. No. 204, PageID 908). Grant is referring to the specific overt acts in which he is alleged in ¶¶ 16 and 17 to have engaged. But the Second Superseding Indictment contains much more than that, alleging in the first part of Count I the various parts of the conspiracy and the manner and means of carrying it out.

A conspiracy consists of an agreement among several people to engage in an illegal activity plus one or more over acts taken to carry it out. The allegations against Grant are not limited to the overt acts he is alleged to have engaged in. Moreover, Grant has cited no case law to show that the Second Superseding Indictment is insufficient on its face.

**Subclaim Six**

In his sixth subclaim, Grant asserts Mr. Rion did no pretrial discovery, although he gives no factual basis for making this assertion. Discovery in criminal cases in this District ordinarily takes place by production to defense counsel of information the Government has assembled to prove its case. Grant offers no proof this did not happen.

Moreover, Grant makes no showing of any prejudice. That is, he does not even allege what it is that Mr. Rion would have discovered that would have made a difference in the case.

**Subclaim Seven**

In subclaim seven, Grant claims the Government threatened to file an information under 21 U.S.C. § 851 charging him with a prior drug conviction which would have doubled the

mandatory minimum under 21 U.S.C. § 841. He claims that somehow Mr. Rion should have protected him from this unconstitutional threat.

Grant does not say why the threat was unconstitutional and does not claim he has no prior felony drug offenses. If he did, the threat would be perfectly legal. While Mr. Rion could not protect him from the threat, he did protect him from having the 851 information filed: the Plea Agreement expressly says that the Government will forbear filing an 851 information if Grant pleads guilty.

**Subclaim Eight**

In his eighth subclaim, Grant makes several assertions which directly contradict the answers he gave under oath at the plea colloquy. He says he was promised a downward departure from the Sentencing Guideline range if he cooperated with the Government. No mention of cooperation is made in the Plea Agreement, so if such a promise was made, Grant lied under oath when he said there were no promises outside of the Plea Agreement.

In any event, if what Grant was promised was a downward departure from the guideline range, he received that. The initial guideline range stated on the record at the plea colloquy was 210 to 262 months imprisonment. (Plea Colloquy Transcript, Doc. No. 185, PageID 696.) Grant was sentenced to thirty months less than the minimum in that range.

Grant swore in the plea colloquy that he had not been promised any particular sentence, but he claims in his Motion that he received "a sentence substantially higher than what he was promised."

Grant alleges that a 5kl.1 motion was part of his agreement with the Government, but that the Government did not abide by that part of the deal because it was not in writing. However, the Plea Agreement says nothing about such a motion and Grant swore at the plea colloquy hearing that there were no promises other than those in the Plea Agreement.

Grant says in his Motion that he believed he would not be punished for possessing a firearm because the separate firearms charge was being dismissed. However, the Plea Agreement says that he acknowledges he can have his sentence enhanced because of use of a weapon even though the separate charge is being dismissed. (Plea Agreement, Doc. No. 162, ¶ 7.b).

In sum in his eighth subclaim Grant says Mr. Rion could have gotten him a better deal, but he offers no proof that the Government was prepared to offer anything different from what he agreed to. Furthermore, he has essentially admitted to perjury by foreswearing many of the statements he made under oath at the plea colloquy.

**Subclaim Nine**

In his ninth subclaim, Grant makes an extended argument about why his sentence is unconstitutional under *Alleyne v. United States*. 570 U.S. ___, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013), and *Descamps v. United States*, 570 U.S. ___, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013). Neither of those cases applies to Grant's situation.

In *Alleyne*, the Court overruled *Harris v. United States*, 536 U.S. 545 (2002), and held that any facts necessary to prove that a defendant is liable to a mandatory minimum sentence are an element of the offenses which must be charged in the indictment and proven to a jury beyond

a reasonable doubt. Thus the Court brought mandatory minimum sentences within the line of cases begun with *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In this case the United States was completely compliant with *Alleyne* before it was decided. The amount of cocaine (five kilograms) necessary to make Grant eligible for the mandatory minimum sentence of ten years was charged against him by the grand jury in the Second Superseding Indictment (Doc. No. 86, 337). Of course if the case had gone to trial, the Government would have had to prove that amount. But by pleading guilty Grant gave up his right to put the Government to its proof on that element as on every other element of the charge. And the necessary five kilograms are included in the Statement of Facts which Grant agreed to and which formed the basis of the finding of guilt.

Grant complains not that Judge Rose found a necessary statutory element, but that he found a connection between the firearm Grant admitted possessing and the cocaine conspiracy. Judge Rose did indeed make that finding before sentence. But the gun possession was a fact Judge Rose found for deciding where to place Grant within the Sentencing Guidelines, not an element necessary for a mandatory statutory minimum. Neither *Alleyne* nor any of the Supreme Court's decision in the *Apprendi* line of cases requires that facts relied on by the sentencing judge to place a defendant appropriately within the Sentencing Guidelines or to otherwise inform his discretion under 18 U.S.C. § 3553 are required to be indicted and proved beyond a reasonable doubt.

*Descamps* is also completely inapplicable to Grant's case. That case involved a determination of the method to be used in determining which state offenses are violent felonies for purposes of the Armed Career Criminal Act. It involved a question of interpreting state statutes, not findings of fact.

In any event, in the entire course of his ninth subclaim, Grant never mentions any alleged deficient performance by Mr. Rion. It cannot be ineffective assistance of trial counsel to fail to mention cases which do not apply. And even if they did apply to persons convicted after they were handed down, they would not have applied when Grant was sentenced, more than a year before they were decided.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge concludes that the Motion and the record of prior proceedings establish that Grant is not entitled to relief. It is therefore respectfully recommended that the Motion to Vacate be DISMISSED WITH PREJUDICE. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

December 18, 2013.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ.

P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).